## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | | |
|---|---|---|
| The Marshall Tucker Band, Inc., and Doug Gray, | ) ) ) | **C.A. No.** _7:16-cv-00420-MGL_ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| M T Industries, Inc., and Ron Rainey, | ) ) ) | **(JURY TRIAL DEMANDED)** |
| Defendants. | ) ) | |
| _____ | ) | |

Plaintiffs The Marshall Tucker Band, Inc., and Doug Gray ("Plaintiffs"), complaining of

Defendants M T Industries, Inc., and Ron Rainey, hereby show this Court the following:

### Preliminary Statement

1.     This is a civil action seeking:  (a) a declaratory judgment that The Marshall Tucker Band,

Inc. ("MTB"), is the sole and exclusive owner of the name "The Marshall Tucker Band" (the

"Name") and the MTB logo (the "Logo"); (b) cancellation of two trademarks that M T

Industries, Inc. ("MTI") registered with the United States Patent and Trademark Office (USPTO)

using the Name and the Logo, which MTI does not own in whole or in part; (c) recovery against

MTI for trademark infringement under South Carolina common law; (d) injunctive relief and

recovery against MTI for intentional trademark dilution under the Federal Trademark Dilution

Act, 28 U.S.C. § 1125; (e) recovery against MTI for breach of contract; and (f) recovery against

MTI and Ron Rainey ("Rainey") for violation of the South Carolina Unfair Trade Practices Act,

S.C. Code Ann. § 39-5-10, *et seq.*

### Parties

2.     MTB is a corporation organized and existing under the laws of the State of South

Carolina.

3.     MTB is the legal touring entity of The Marshall Tucker Band, and is the exclusive owner

of the Name and the Logo.

4.      Doug Gray ("Gray") is an individual resident and citizen of the State of South Carolina.

5.      Gray is the lead singer and remaining original member of The Marshall Tucker Band, and is the exclusive owner of MTB.

6.      Gray also owns 20% of the stock of MTI.

7.      MTI is a corporation organized and existing under the laws of the State of South Carolina.

8.      MTI owns the master recording rights to the first seven albums recorded by The Marshall Tucker Band.

9.      Rainey is an individual resident and citizen of the State of California.

10.      Rainey owns 80% of MTI's stock.

**Jurisdiction and Venue**

11.      Plaintiffs' declaratory judgment claim is brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the South Carolina Uniform Declaratory Judgment Act, S.C. Code § 15-53-10, *et seq.*

12.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under 15 U.S.C., Chapter 22 - Trademarks), 28 U.S.C. § 1125 (Federal Trademark Dilution Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1367 (supplemental jurisdiction).

13.      This Court has personal jurisdiction over MTI, because it is a corporation organized under the laws of South Carolina.

14.      This Court has personal jurisdiction over Rainey, because Rainey has engaged in directed business dealings in South Carolina, both generally and with respect to the specific events giving rise to Plaintiffs' claims.

15.      Venue is proper in this Court because Defendants have conducted significant business in

this district, and because a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

## Relevant Facts

16.    The Marshall Tucker Band is a Southern rock musical group that was formed in Spartanburg, South Carolina, in 1971 by lead singer Gray and five other band members.

17.    The Name "The Marshall Tucker Band" was created by the original members of The Marshall Tucker Band when the band formed in 1971.

18.    The Marshall Tucker Band's original members derived the Name from the name of a local piano tuner, Marshall Tucker, whose name was printed on a key ring the members found in the band's rehearsal space.

19.    Also in 1971, the original members of The Marshall Tucker Band developed the Logo for the band.

20.    The Logo features the four words of the Name, specifically, "The Marshall Tucker Band," arranged in descending order and in a distinctive font, in which the secondary letters of the last three words slope upward toward the right and are double-underlined.

21.    A true and accurate copy of the Logo is attached hereto as Exhibit 1.

22.    Since 1971 and continuing through the present, The Marshall Tucker Band has performed under the Name and using the Logo.

23.    Since 1971, consumers throughout the United States and internationally have come to recognize the Name and the Logo as being associated with The Marshall Tucker Band.

24.    Over the past four decades, The Marshall Tucker Band has recorded and released multiple albums, most of which have sold over 500,000 copies to become "gold" records.

25.    Among The Marshall Tucker Band's biggest hits are "Can't You See," "Fire On The Mountain," "Heard It In A Love Song," "Take the Highway," and "Searchin' For A Rainbow."

26.    The Marshall Tucker Band is widely known in the United States and internationally.

27.    The Name is famous.

28.    The Logo also is famous.

29.    The Logo is so well-known that in 2014, GRAMMY® Magazine picked it as one of the top ten distinctive artist brands, along with the logos for The Beatles, The Rolling Stones, and KISS.

30.    In 1974, The Marshall Tucker Band incorporated in South Carolina as The Marshall Tucker Band, Inc. ("MTB").

31.    MTB owns the Name, the Logo, and all merchandise rights relating to The Marshall Tucker Band.

32.    MTB also is the legal touring entity of The Marshall Tucker Band.

33.    MTB has maintained exclusive ownership of the Name and the Logo since its formation in 1974.

34.    MTB has never sold the Name or the Logo, or any ownership rights therein, to any party.

35.    On February 4, 1974, MTB registered a trademark consisting of the Name with the United States Patent and Trademark Office (USPTO).

36.    The federal trademark MTB registered with the USPTO in 1974 bore U.S. Serial Number 73012470 and U.S. Registration Number 1023429.

37.    Although MTB has never transferred ownership of the Name to any party, MTB did not maintain the federal mark registration it obtained in 1974, and that registration expired on October 21, 1975.

38.    Since in or around 1999, MTB has maintained registrations in the State of South Carolina for two trademarks and a service mark containing the Name and the Logo.

39.    True and accurate copies of the State of South Carolina registration certificates for MTB's trademarks and service mark are attached hereto collectively as Exhibit 2.

40.    The South Carolina registration certificates for MTB's trademarks and service mark

identify the date of first use of the marks as being April 1, 1973; however, as described above, The Marshall Tucker Band began using the Name and the Logo in 1971, and MTB's ownership of the Name and Logo was established in 1974, when MTB was incorporated.

41.    MTI was formed in 1978 by the original members of The Marshall Tucker Band, who held MTI's stock in equal parts.

42.    MTI was formed to serve as the publishing company for The Marshall Tucker Band's music.

43.    In 1984, MTB, the five original members of The Marshall Tucker Band who were living at that time, and MTI executed a letter agreement (the "Letter Agreement") outlining certain agreements between and among those parties.

44.    A true and accurate copy of the Letter Agreement is attached hereto as <u>Exhibit 3</u>.

45.    The Letter Agreement is a valid contract, has never been modified, and remains in full force and effect.

46.    The Letter Agreement includes a provision expressly confirming that the Name is the sole and exclusive property of MTB.

47.    Specifically regarding the Name, the Letter Agreement provides:

> 4. <u>Marshall Tucker Band Name</u>
>
> Toy, Paul and George agree that the name Marshall Tucker Band and any names similar thereto (collectively "Name") shall be the sole and exclusive property of:  (i) MTB with respect to future live performances, (ii) such companies as Doug and Jerry may elect with respect to the recordings recently financed by Doug ("Doug's Record") and any and all other recordings to be done in the future, and (iii) MTB with respect to any and all other media, areas and uses.  Without limiting the foregoing, everyone agrees that MTB, Doug, Jerry and such companies shall have the right to so use the Name with a band comprised of such persons, and number of persons, as MTB, Doug and Jerry may elect. Anything to the contrary notwithstanding, MTI shall have the right to use, and to permit others to use, the Name in connection with all previously released masters of the band and all other recordings of the band made prior to the date hereof (other than Doug's Record).  Neither Toy, Paul nor George shall have the right to use the Name in any manner whatsoever, whether with respect to live performances or otherwise, but they shall have the right to state as part of their

biography on the back (but not the front) of an album jacket (or similar packaging) that they were formerly with The Marshall Tucker Band.

48.    The Letter Agreement states that MTI owns all publishing rights in all music compositions that were written by members of The Marshall Tucker Band and that were recorded before the date of the Letter Agreement (the "MTI Inventory").

49.    The Letter Agreement conveys to MTI an express license to use the Name in connection with the MTI Inventory.

50.    The Letter Agreement does not convey to MTI any ownership interest in the Name.

51.    MTB has not conveyed to MTI by any other means or at any other time an ownership interest in the Name.

52.    Rainey owns and operates Ron Rainey Management, Inc. ("RRM"), in Beverly Hills, California.

53.    RRM is in the business of providing management services to clients in the music industry.

54.    In or around 1991, RRM began providing management services to MTB and Gray.

55.    Since the time RRM began providing management services to MTB and Gray, those parties have executed several management agreements.

56.    The last written management agreement in effect between and among RRM, MTB, and Gray was a letter agreement that was drafted by Rainey and executed by those parties in November 2008 (the "2008 Management Agreement").

57.    The 2008 Management Agreement became effective on November 11, 2008, and expired on November 11, 2014.

58.    No written management agreement has existed between and among RRM, MTB, and Gray since the 2008 Management Agreement expired on November 11, 2014.

59.    In 2000, RRM began purchasing shares of MTI from MTI's original shareholders, other

than Gray.

60.     RRM transferred the ownership of its shares of MTI to Rainey.

61.     Rainey presently owns 80% of MTI's stock, and Gray owns 20% of MTI's stock.

62.     Rainey serves as president of MTI.

63.     In early 2010, Gray was engaging in estate planning efforts.

64.     In relation to the estate planning efforts in which Gray was engaging in 2010, counsel for Gray and MTB asked Rainey to explain the interrelation, if any, between and among MTB, MTI, and another entity owned by Rainey and Gray, Marshall Tucker Entertainment, Inc. ("MTE").

65.     On or about March 3, 2010, Rainey prepared and sent MTB's and Gray's counsel a "Marshall Tucker Road Map" (the "Road Map") that "explains what MTB, MTI, and MTE are and what they do."

66.     A true and accurate copy of the Road Map is attached hereto as <u>Exhibit 4</u>.

67.     Among other things, the Road Map confirms Rainey's understanding that "MTB, INC IS THE OWNER OF THE BAND NAME, LOGO, MERCHANDISE RIGHTS AND IS THE LEGAL TOURING ENTITY OF THE BAND."

68.     In 2014, MTB decided to obtain federal registration of the Name and the Logo, in order to allow MTB to seek statutory damages in the event of infringing use of the Name or the Logo.

69.     On September 5, 2014, MTB applied with the USPTO for three marks containing the Name and the Logo (collectively, the "MTB Marks").

70.     The serial numbers for the three mark applications MTB submitted to the USPTO in September 2014 (collectively, the "MTB Applications") are 86386762, 86386613, and 86386828.

71.     True and accurate copies of the MTB Applications are attached hereto collectively as <u>Exhibit 5</u>.

72.     On December 22, 2014, the USPTO issued MTB's counsel an official letter regarding

each of the three MTB Applications (collectively, the "USPTO Letters").

73.    The USPTO Letters advised, among other things, that the USPTO denied registration of the MTB Marks "because of a likelihood of confusion with the marks in U.S. Registration Nos. 4616427 and 4616428[.]"

74.    True and accurate copies of the USPTO Letters are attached hereto collectively as <u>Exhibit 6</u>.

75.    Attached to the USPTO Letters was documentation regarding U.S. Registration Nos. 4616427 and 4616428.

76.    The documentation attached to the USPTO Letters reflects that on December 6, 2013, MTI filed applications with the USPTO to register one mark containing the Name, and another mark containing the Name and the Logo, and that such marks were registered by the USPTO on October 7, 2014.

77.    The two trademarks registered by MTI (the "Infringing Marks") bear U.S. Registration Nos. 4616427 and 84616428.

78.    True and accurate copies of the registration certificates for the Infringing Marks are attached hereto collectively as <u>Exhibit 7</u>.

79.    The USPTO Letters were the first notice MTB or Gray ever received that MTI had applied for or registered the Infringing Marks.

80.    MTI applied for and registered the Infringing Marks at the direction of Rainey.

81.    Rainey directed counsel for MTI to apply for and register the Infringing Marks without advising MTB or Gray.

82.    Rainey never mentioned to MTB or Gray that he planned to have MTI apply for and register any trademarks including the Name or the Logo.

83.    MTI applied for and registered the Infringing Marks without MTB's or Gray's knowledge or consent.

84.    MTI applied for and registered the Infringing Marks without having any ownership interest in the Name or the Logo.

85.    In signing the applications for the Infringing Marks, MTI falsely declared, among other things, that it owns the Name and the Logo.

86.    In signing the applications for the Infringing Marks, MTI falsely declared, among other things, that to the best of its belief, no person or entity other than MTI has the right to use the Name or the Logo, either in identical form or in such a form that would cause confusion or mistake.

87.    At no time before receiving the USPTO Letters did MTB or Gray know that MTI had applied to register, or received registration of, federal trademarks containing the Name and the Logo.

88.    On January 7, 2015, Gray and counsel for MTB and Gray telephoned Rainey and advised him that they had learned that MTI had, without MTB's or Gray's knowledge or consent, applied for and registered the Infringing Marks.

89.    During their telephone conversation with Rainey on January 7, 2015, Gray and counsel for MTB and Gray demanded that Rainey take action to cancel the Infringing Marks.

90.    During his January 7, 2015, telephone conversation with Gray and counsel for MTB and Gray, Rainey acknowledged that MTB owns the Name exclusively and that MTI has no ownership interest in it, and that he had directed the filing of the Infringing Marks without MTB's or Gray's knowledge or permission.

91.    During his January 7, 2015, telephone conversation with Gray and counsel for MTB and Gray, Rainey stated that he would take whatever action was necessary to cancel the Infringing Marks.

92.    On February 2, 2015, counsel for MTB and Gray wrote Rainey a letter reiterating MTB's exclusive ownership of the Name, demanding that Rainey direct the lawyer who filed the

Infringing Marks to cancel them immediate, and asking Rainey to confirm in writing once the Infringing Marks were cancelled.

93.    A true and accurate copy of the letter counsel for MTB and Gray wrote Rainey on February 2, 2015, is attached hereto as Exhibit 8.

94.    On February 9, 2015, Attorney Rick Albert responded on behalf of Rainey to MTB and Gray's counsel's February 2, 2015, demand letter.

95.    A true and accurate copy of the letter Attorney Albert wrote counsel for MTB and Gray on February 9, 2015, is attached hereto as Exhibit 9.

96.    In the letter Attorney Albert wrote counsel for MTB and Gray on February 9, 2012, Attorney Albert claimed the Letter Agreement vests MTI with ownership of the Name with regard to certain uses.

97.    In the letter Attorney Albert wrote counsel for MTB and Gray on February 9, 2012, Attorney Albert refused to cancel MTI's Infringing Marks, insisting that MTI "need[s] protection of a registration in [its] respective area[] of use," and offering instead to have a "co-existence/consent agreement" prepared for filing with the USPTO.

98.    On March 6, 2015, counsel for MTB and Gray wrote Attorney Albert, rejecting Attorney Albert's claim that MTI possesses any ownership interest in the Name, advising that a "co-existence/consent agreement" would not properly reflect the parties' respective rights to the Name and therefore would not be acceptable, and renewing the demand that the Infringing Marks be cancelled.

99.    A true and accurate copy of the letter counsel for MTB and Gray wrote Albert on March 6, 2015, is attached hereto as Exhibit 10.

100.    On March 16, 2015, Attorney Albert wrote MTB and Gray's counsel, claiming that MTI possesses trademark rights in the Name that arise from its commercial use of the Name and that "have nothing to do with ownership of copyright, if any, in the name," and again refusing to

cancel the Infringing Marks.

101.    A true and accurate copy of the letter Attorney Albert wrote counsel for MTB and Gray on March 16, 2015, is attached hereto as Exhibit 11.

102.    MTI has failed and refused to cancel the Infringing Marks.

**FOR A FIRST CAUSE OF ACTION**
**Declaratory Judgment of Trademark Ownership**
**(As to MTI)**

103.    All prior allegations are realleged and incorporated to the extent consistent herewith.

104.    This claim is asserted pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the South Carolina Uniform Declaratory Judgment Act, S.C. Code § 15-53-10, *et seq.*

105.    A justiciable controversy exists between MTB and MTI in which those parties have a legal and actual interest and which is ripe for resolution.

106.    MTB is the sole and exclusive owner of the Name and the Logo.

107.    The Name and the Logo have been in continuous use by The Marshall Tucker Band since 1971.

108.    MTB has used the Name and the Logo continually in its business since 1974, when it incorporated and became the legal touring entity of The Marshall Tucker Band.

109.    MTI was formed in 1978.

110.    MTI has no ownership interest in the Name or the Logo.

111.    On December 6, 2013, MTI filed applications with the USPTO to register the Infringing Marks, one of which contains the Name, and the other which contains the Name and the Logo.

112.    The USPTO registered the Infringing Marks on October 7, 2014.

113.    MTI has failed and refused to cancel the Infringing Marks.

114.    Although MTI does not own the Name or the Logo, MTI has asserted and continues to assert an ownership interest in the Name and the Logo.

115.    MTI's assertion of an ownership interest in the Name and the Logo, among other things:

    a.    tends to destroy the otherwise exclusive association in the eyes of the public between MTB and its proprietary Name and Logo;

    b.    has prevented and prevents MTB from registering the MTB Marks, despite MTB's exclusive ownership of the Name and the Logo;

    c.    creates a substantial risk of confusion as to the true owner of the Name and the Logo; and

    d.    has damaged, and presents a risk of irreparable injury, to MTB.

116.    This Court has the power to declare the rights of MTB and MTI as to the ownership of the Name and the Logo.

117.    As a direct and proximate result of MTI's assertion of an ownership interest in the Name and the Logo, MTB has been damaged and is entitled to a declaration by this Court that MTB is the sole and exclusive owner of the Name and the Logo.

**FOR A SECOND CAUSE OF ACTION**
**Equitable Relief in the Form of Trademark Cancellation Due to Fraud**
**(As to MTI)**

118.    All prior allegations are realleged and incorporated to the extent consistent herewith.

119.    MTB is the sole and exclusive owner of the Name and the Logo.

120.    MTI has no ownership interest in the Name or the Logo.

121.    Although MTI does not own the Name or the Logo, MTI applied for and registered with the USPTO the Infringing Marks, one of which consists of the Name, and the other of which consists of the Name and the Logo.

122.    In applying for and registering the Infringing Marks, MTI falsely represented to the USPTO that MTI owns the Name and the Logo.

123.    The false representation MTI made to the USPTO that it owns the Name and the Logo is material to MTI's ability to register the Infringing Marks.

124.    MTI knew when it applied for and registered the Infringing Marks that it does not own the Name or the Logo.

125.    MTI falsely represented to the USPTO that it owns the Name and the Logo with the intent to deceive the USPTO.

126.    MTI's falsely representing to the USPTO that it owns the Name and the Logo resulted in the USPTO's registering the Infringing Marks.

127.    MTI's registration of the Infringing Marks is invalid.

128.    In applying for and registering the Infringing Marks, MTI infringed on MTB's ownership rights in the Name and the Logo.

129.    MTI lacked any basis on which to register the Infringing Marks.

130.    MTI lacks any basis on which to maintain the Infringing Marks.

131.    MTB has demanded that MTI cancel the Infringing Marks.

132.    MTI has failed and refused to cancel the Infringing Marks.

133.    MTI's maintaining the Infringing Marks creates a substantial risk of confusion as to the true owner of the Name and the Logo.

134.    MTI's registration and maintenance of the Infringing Marks has rendered MTB unable to register the MTB Marks.

135.    MTI's maintaining the Infringing Marks has damaged and presents a risk of irreparable injury to MTB.

136.    MTB lacks an adequate legal remedy to protect its interest in the Name and the Logo.

137.    MTB will suffer hardship and damages if MTI is not required to cancel the Infringing Marks.

138.    The public interest will be served by the issuance of an order requiring MTI to cancel the Infringing Marks.

139.    MTB is entitled to equitable relief in the form of an order requiring MTI to cancel the Infringing Marks.

## FOR A THIRD CAUSE OF ACTION
## Trademark Infringement Under South Carolina Common Law
### (As to MTI)

140.    All prior allegations are realleged and incorporated to the extent consistent herewith.

141.    MTB is the sole and exclusive owner of the Name and the Logo.

142.    The Name and the Logo have been in continuous use by The Marshall Tucker Band since 1971.

143.    MTB has used the Name and the Logo continually in its business since 1974, when it incorporated and became the legal touring entity of The Marshall Tucker Band.

144.    The Name and the Logo are recognized throughout the United States and internationally as being associated with MTB.

145.    Through such usage and recognition, MTB has acquired common law rights in the Name and the Logo.

146.    The Name and the Logo are distinct and famous, and have acquired a special and particular significance and association with MTB.

147.    MTI has no ownership interest in the Name or the Logo.

148.    Although MTI does not own the Name or the Logo, MTI applied for and registered with the USPTO the Infringing Marks.

149.    In applying for and registering the Infringing Marks, MTI falsely represented to the USPTO that MTI owns the Name and the Logo.

150.    MTI's registration of the Infringing Marks is invalid.

151.    MTB has demanded that MTI cancel the Infringing Marks.

152.    MTI has failed and refused to cancel the Infringing Marks.

153.    MTI's registering and maintaining the Infringing Marks infringes on MTB's ownership interest and rights in the Name and the Logo.

154.    MTI's infringement of MTB's common law rights in the Name and the Logo, among other things:

    a.    tends to destroy the otherwise exclusive association in the eyes of the public between MTB and its proprietary Name and Logo;

    b.    has prevented and prevents MTB from registering the MTB Marks, despite MTB's exclusive ownership of the Name and the Logo;

    c.    creates a substantial risk of confusion as to the true owner of the Name and the Logo; and

    d.    has damaged, and presents a risk of irreparable injury, to MTB.

155.    As a direct and proximate result of MTI's infringing use of the Name and the Logo, MTB has been damaged and is entitled to judgment against MTI for direct damages, interest, and equitable relief, in an amount and form to be determined by the Court.

**FOR A FOURTH CAUSE OF ACTION**
**Violation of the Federal Trademark Dilution Act, 28 U.S.C. § 1125**
**(As to MTI)**

156.    All prior allegations are realleged and incorporated to the extent consistent herewith.

157.    MTB is the sole and exclusive owner of the Name and the Logo.

158.    The Name and the Logo have been in continuous use by The Marshall Tucker Band since 1971.

159.    MTB has used the Name and the Logo continually in its business since 1974, when MTB incorporated and became the legal touring entity of The Marshall Tucker Band.

160.    The Name and the Logo are recognized throughout the United States and internationally as being associated with MTB.

161.    The Name and the Logo are famous.

162.    The Name and the Logo have inherent and acquired distinctiveness.

163.    The Name and the Logo are especially prominent and renowned in the music industry.

164.    MTI has no ownership interest in the Name or the Logo.

165.    Although MTI does not own the Name or the Logo, MTI applied for and registered with the USPTO the Infringing Marks.

166.    In applying for and registering the Infringing Marks, MTI falsely represented to the USPTO that MTI owns the Name and the Logo.

167.    MTI's registration of the Infringing Marks is invalid.

168.    MTB has demanded that MTI cancel or withdraw the Infringing Marks.

169.    MTI has failed and refused to cancel the Infringing Marks.

170.    MTI is seeking to profit by using the Infringing Marks and by claiming an ownership interest in the Name and the Logo.

171.    MTI's using the Infringing Marks and claiming an ownership interest in the Name and the Logo dilutes, or is likely to dilute, the distinctive value of the Name and the Logo.

172.    MTI's diluting use of the Name and the Logo began after the Name and the Logo became famous.

173.    MTI's diluting use of the Name and the Logo tends to destroy the otherwise exclusive association in the eyes of the public between MTB and the Name and the Logo.

174.    MTI's diluting use of the Name and the Logo is willful.

175.    MTB is entitled to an order permanently enjoining MTI from using the Infringing Marks and from claiming an ownership interest in the Name and the Logo, and to an award of damages, MTI's profits, and costs of this action, in amounts to be determined by the Court.

### FOR A FIFTH CAUSE OF ACTION
### Breach of Contract
### (As to MTI)

176.    All prior allegations are realleged and incorporated to the extent consistent herewith.

177.   MTB and MTI entered into a valid and enforceable Letter Agreement contract as set forth above.

178.   MTI has breached the Letter Agreement by:

    a.    claiming an ownership interest in the Name and the Logo;

    b.    applying for and obtaining federal registration of the Infringing Marks based on a false claim of ownership of the Name and the Logo;

    c.    using the Name and the Logo for purposes exceeding the usage rights licensed to it by MTB;

    d.    violating the implied covenant of good faith and fair dealing;

    e.    otherwise violating the terms of the Letter Agreement, as may be proved at trial.

179.   As a direct and proximate result of MTI's breach of the Letter Agreement, MTB has been damaged and is entitled to judgment against MTI for actual damages and consequential damages, in amounts to be determined by the Court.

### FOR A SIXTH CAUSE OF ACTION
### Violation of the Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*
### (As to MTI and Rainey)

180.   All prior allegations are realleged and incorporated to the extent consistent herewith.

181.   MTB is the sole and exclusive owner of the Name and the Logo.

182.   The Name and the Logo have been in continuous use by The Marshall Tucker Band since 1971.

183.   MTB has used the Name and the Logo continually in its business since 1974, when MTB incorporated and became the legal touring entity of The Marshall Tucker Band.

184.   The Name and the Logo are recognized throughout the United States and internationally as being associated with MTB.

185.   The Name and the Logo are especially prominent and renowned in the music industry.

186.   Plaintiffs and Defendants are engaged in business in the music industry.

187.    Plaintiffs and Defendants engage in business activities involving The Marshall Tucker Band.

188.    Plaintiffs' and Defendants' trade territories overlap.

189.    MTI has no ownership interest in the Name or the Logo.

190.    Rainey knows, and at all times material to this action knew, that MTI has no ownership interest in the Name or Logo.

191.    Defendants have engaged in unfair and deceptive acts or practices in the conduct of trade or commerce which include, without limitation:

    a.    falsely claiming an ownership interest in the Name and the Logo;

    b.    applying for and obtaining federal registration of the Infringing Marks based on a false claim of ownership of the Name and the Logo;

    c.    using the Name and the Logo in the course of doing business;

    d.    creating the likelihood that consumers will be confused as to the ownership of the Name and the Logo; and

    e.    creating the likelihood that consumers will be confused as to the source of goods or services advertised using the Name and the Logo.

192.    Defendants engaged in their unfair and deceptive trade practices intentionally and willfully, as will be shown by the evidence, which includes, without limitation, Defendants':

    a.    directing counsel for MTI to apply for the Infringing Marks, when MTI lacks any ownership interest in the Name and the Logo;

    b.    intentionally concealing from Gray that counsel for MTI had applied for the Infringing Marks, which infringe on MTB's ownership rights in the Name and the Logo;

    c.    failing to notify or advise Gray that counsel for MTI had applied for the Infringing Marks, which infringe on MTB's ownership rights in the Name and the Logo;

d.    registering the Infringing Marks, in violation of MTB's ownership and common law rights in the Name and the Logo;

e.    failing and refusing to cancel the Infringing Marks, despite lacking any grounds for applying for, registering, or maintaining same;

f.    willfully using the Name and the Logo for purposes exceeding MTI's licensed usage rights;

g.    intentionally misleading Plaintiffs into believing the Infringing Marks would be canceled, when Defendants had no intent to do so;

h.    forcing Plaintiffs to sue Defendants for cancellation of the Infringing Marks, when Defendants know MTI lacks any basis for having applied for, having registered, or maintaining the Infringing Marks;

i.    utilizing the Infringing Marks in an effort to induce Plaintiffs to execute with RRM a management agreement on terms favorable to RRM; and

j.    Otherwise acting adversely to Plaintiffs' interests, as may be proved at trial.

193.    Rainey is the majority shareholder of MTI.

194.    Rainey directed MTI's actions in obtaining and refusing to cancel the Infringing Marks.

195.    Rainey personally committed, participated in, and authorized the above unfair acts by MTI.

196.    Defendants' acts directly and indirectly affect the people of South Carolina and impact the public interest.

197.    Defendants' acts have the potential for repetition.

198.    Defendants' acts constitute a willing and knowing violation of S.C. Code Ann. § 39-5-10, *et seq.*

199.     As a direct and proximate result of Defendants' violation of S.C. Code Ann. § 39-5-10, *et seq.*, Plaintiffs have been damaged and are entitled to recover actual damages, treble damages, and reasonable attorney's fees for such injuries.

WHEREFORE, Plaintiffs pray that the Court:

(a)     Determine and declare that MTB is the sole and exclusive owner of the Name and the Logo, and that MTI has no ownership interest in the Name or the Logo;

(b)     Issue an order requiring MTI to cancel the Infringing Marks within twenty (20) days of the date of this Order;

(c)     Permanently enjoin MTI from maintaining the Infringing Marks or claiming any ownership interest in the Name and the Logo;

(d)     Award MTB damages resulting from MTI's infringing use of the Name and the Logo;

(e)     Award MTB damages resulting from MTI's diluting use of the Name and the Logo;

(f)     Award MTB damages resulting from MTI's breach of the Letter Agreement;

(g)     Enter judgment against Defendants, for treble damages and attorney's fees with respect to Plaintiffs' claim for violation of the South Carolina Unfair Trade Practices Act;

(h)     Award interest to Plaintiffs;

(i)     Award Plaintiffs their reasonable attorneys' fees;

(j)     Tax the costs of this action against Defendants; and

(k)     Grant Plaintiffs such other and further relief as the Court deems proper.

February 10, 2016                    By: _____

Michael B.T. Wilkes (Fed. ID #4658)
mwilkes@wilkeslaw.com
Ellen S. Cheek (Fed. ID #9366)
echeek@wilkeslaw.com

WILKES LAW FIRM, P.A.
127 Dunbar Street, Suite 200
Spartanburg, SC  29306
(864) 591-1113 (phone)
(864) 591-1767 (facsimile)

Counsel for Plaintiffs