

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| THE MARSHALL TUCKER BAND, INC., and DOUG GRAY, Plaintiffs, | § § § § | |
| vs. | § § | CIVIL ACTION NO. 7:16-00420-MGL |
| M T INDUSTRIES, INC., and RON RAINEY, Defendants. | § § § | |

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANTS' MOTION TO DISQUALIFY

**I.     INTRODUCTION**

Plaintiffs the Marshall Tucker Band, Inc. (MTB) and Doug Gray (Gray) (collectively Plaintiffs) filed this case alleging claims for trademark dilution and infringement, breach of contract, conversion, unfair trade practices, and breach of contract accompanied by a fraudulent act. They also seek trademark cancellation and declaratory relief. The Court has jurisdiction over the matter under 28 U.S.C. §§ 1331 and 1367. Pending before the Court is Defendants M T Industries, Inc. (MTI) and Ron Rainey (Rainey) (collectively Defendants)'s motion to disqualify Plaintiffs' counsel, Attorney Michael Wilkes (Wilkes) and Attorney Ellen Cheek (Cheek) (collectively Plaintiffs' counsel). Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court that Defendants' motion will be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

This case concerns certain trademarks related to the actual band itself, the Marshall Tucker Band (the Band or the Name). Gray is one of the original five members of the Band, and MTB is a corporate entity related to the Band. ECF No. 31-1 at 2. Wilkes has served as counsel for Plaintiffs continually since 1995. ECF No. 35 at 4. Cheek began practicing with Wilkes in March 2003, serving with him as counsel to Plaintiffs since that time. *Id.* Wilkes has also performed work for Plaintiffs that relates to MTI, which is a company the original members of the Band formed to own the publishing rights to the first eight albums the Band recorded (the pre-1984 master recordings). *Id.* Gray is a 20% owner of MTI, and Rainey is the majority owner. *Id.* Rainey served as the Band's manager for over twenty-five years. ECF No. 31-1 at 1.

In or around 1982, Wilkes defended MTI in a contract suit Warner Brothers filed against it involving payment for the final album of a five album contract. ECF No. 35 at 4-5. The case eventually settled. *Id.* Following that lawsuit, Wilkes represented neither Plaintiffs nor MTI until he began serving as counsel to Plaintiffs in 1995. *Id.* at 5. Since the inception of Wilkes's representation of Plaintiffs in 1995, MTI has employed a number of attorneys as counsel, including Ron Taft, Ken Anthony, Ken Kraus, Bernard Fischbach, Michael Martin, and Rick Albert. *Id.* Importantly, Ron Taft drafted the 1984 Letter Agreement, which sets forth ownership in the Name and which both Plaintiffs and Defendants acknowledge constitutes a crucial issue at dispute in the instant action. *Id.*; ECF No. 31-1 at 3. Plaintiffs' counsel played no part in the drafting or discussion of the 1984 Letter Agreement and had no involvement at all in that transaction. ECF No. 35 at 5.

Between approximately 1999 and 2010, at Rainey's request, Plaintiffs' counsel engaged in legal work on MTI's behalf. ECF No. 35 at 6. For example, Plaintiffs' counsel asserted a demand in or around 2003 that certain third parties cease violating MTI's copyrights in the pre-1984 master recordings by manufacturing and selling unauthorized recordings of those songs. *Id.* Plaintiffs' counsel additionally issued stock certificates at the request of MTI's corporate counsel and reviewed MTI's bylaws to determine what basic acts they require the corporation to take. *Id.* In 2009 and 2010, Rainey asked Plaintiffs' counsel to update MTI's corporate records. *Id.* at 6-7. Plaintiffs' counsel attest they possess only MTI's bylaws, shareholders' agreement, and some stock certificates. *Id.* at 7. Because Rainey failed to provide the corporate meeting, history, election, and officer information they requested, Plaintiffs' counsel never undertook to prepare or keep any corporate books for MTI. *Id.*

In 2010, Plaintiffs' counsel asked Rainey about the interrelation between and among the various entities having a relationship to the Band. ECF No. 31-1 at 4. Plaintiffs' counsel requested this information from him in relation to estate planning efforts for Gray, which Plaintiffs' counsel were undertaking at that time. ECF No. 35 at 6. In response, Rainey sent Plaintiffs' counsel a "Marshall Tucker Road Map" (Road Map), which sets forth the relationships between MTB, MTI, and Marshall Tucker Entertainment, Inc. (MTE), the three corporate entities related to the Band. *Id.* Gray and Rainey share ownership of MTE, too. *Id.* at 7. Plaintiffs have attached the Road Map as an exhibit to the pleadings in this action. ECF No. 1-4.

Since 2010, Plaintiffs' counsel have actively maintained their attorney-client relationship with Plaintiffs. ECF No. 35 at 7. To the extent their representation of Plaintiffs has included work related to MTI, Plaintiffs' counsel have defined their role as being counsel for Gray, not MTI. *Id.*

3

For instance, in 2014, Plaintiffs' counsel reviewed and provided comments regarding a proposed RED distribution contract with MTE, and a corresponding license agreement between MTI and MTE. *Id.* Gray instructed Rainey to send these documents to Plaintiffs' counsel for their review. *Id.* Plaintiffs' counsel stated to Rainey that their communications with him were made on Gray's behalf. *Id.*

On December 6, 2013, MTI filed its applications with the United States Patent and Trademark Office to register the Name. ECF No. 15-1 at 16. Upon learning of this, Plaintiffs and Plaintiffs' counsel called Rainey on January 7, 2015, and demanded that Defendants cancel the trademarks. ECF No. 35 at 8. When the parties failed to resolve their dispute, Plaintiffs filed their Complaint with this Court on February 11, 2016, and their Amended Complaint on April 13, 2016. ECF Nos. 1, 7.

Defendants then filed their motion to disqualify on July 12, 2016. ECF No. 31. Plaintiffs filed their response in opposition on July 29, 2016, ECF No. 35, to which Defendants filed their reply on August 5, 2016, ECF No. 40. The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of the motion.

## III.    STANDARD OF REVIEW

The disqualification of counsel is a "drastic" measure that should be free from "overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Moreover, the disqualification of a party's chosen counsel is a serious matter that should be undertaken only upon a showing by the moving party that an "actual or likely" conflict of interest exists, rather than

a mere imagined or improbable conflict.  *See Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982).

A motion to disqualify counsel is subject to the Court's supervisory authority to ensure fairness in all judicial proceedings, *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975), and this Court will apply the South Carolina Rules of Professional Conduct (RPC) to ensure that it does so, Rule IV(B), RDE, Local Civ. Rule 83.I.08 (D.S.C.).  Although it is the Court's responsibility to ensure the propriety of the bar, the act of disqualifying a party's counsel is ordinarily not taken without a strong showing.  *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (stating that "in deciding a motion to disqualify counsel great care must be taken to respect a client's choice of counsel while at the same time maintaining the highest ethical standards of professional responsibility").  Thus, the party seeking to disqualify an opposing party's counsel bears a "high standard of proof" to show that disqualification is warranted.  *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

## IV.     CONTENTIONS OF THE PARTIES

In Defendants' motion to disqualify Plaintiffs' counsel, they propound the Court should hold Plaintiffs' counsel to be disqualified under Rules 1.6(a), 1.7, 1.9(a), 1.9(c), and 3.7(a) of the RPC. Defendants allege that Plaintiffs' counsel have served as counsel to MTI on a number of occasions and have never terminated that representation, thus rendering MTI a current client of Plaintiffs' counsel and barring their continued representation of Plaintiffs.  Defendants also contend in the alternative that, even if MTI is deemed a former client of Plaintiffs' counsel, Plaintiffs' counsel are nonetheless prohibited from representing Plaintiffs because this action is the same or a substantially

related matter in which Plaintiffs' interests are materially adverse to the interests of Plaintiffs' counsel's former client, MTI.  Further, Defendants argue that Plaintiffs' counsel are using information gained from Defendants to Defendants' disadvantage, which is also barred by the RPC. Finally, Defendants aver that Plaintiffs' counsel must be disqualified because they are likely to be necessary witnesses on a number of issues if this case were to go to trial.

Plaintiffs dispute each of these assertions.

## V.     DISCUSSION AND ANALYSIS

### A.     Analysis of Defendants' Motion Under Rules 1.6(a) and 1.7

Applying the above standards to the instant matter, the Court first turns to Defendants' argument that Plaintiffs' counsel should be disqualified because MTI is a current client of Plaintiffs' counsel and their continued representation of Plaintiffs violates Rules 1.6(a) and 1.7 of the RPC. Rule 1.6(a) governs the disclosure by a lawyer of information relating to the representation of a current client.  Rule 1.6(a), cmt. 1, RPC, Rule 407, SCACR.  Similarly, Rule 1.7 covers conflicts of interest involving current clients of a lawyer.  Rule 1.7, RPC, Rule 407, SCACR.  It thus follows that, if MTI no longer constitutes a current client of Plaintiffs' counsel, then Rules 1.6(a) and 1.7 are inapplicable to Defendants' motion.  Importantly, for attorneys to terminate an attorney-client relationship, they "must communicate to [their] client [their] desire to withdraw from their attorney-client relationship in such a manner that the client understands [their] attorney will no longer represent [them]." *Tuten v. Joel*, 763 S.E.2d 54, 57 (S.C. Ct. App. 2014).

*1.     Plaintiffs' counsel terminated their attorney-client relationship with MTI*

Subsequent to 2010, Plaintiffs' counsel took action sufficient to satisfy the standard laid out

in *Tuten* requiring Plaintiffs' counsel to communicate to MTI that Plaintiffs' counsel was no longer representing MTI; and MTI had specific knowledge of this fact. Plaintiffs' counsel unequivocally communicated to MTI that they were no longer representing it when they called Rainey on January 7, 2015, in relation to the instant lawsuit and demanded that MTI direct its lawyer to cancel its allegedly infringing trademarks. ECF No. 35-1 at 10. After the call, Rainey responded by e-mail stating that he had spoken to "[his] attorney, Michael Martin[,] regarding correcting the Trademark issue." *Id.* (internal quotation marks omitted). Prior to this call, MTI had retained Attorney Michael Martin to register for MTI the allegedly infringing trademarks at issue in this suit. *Id.* So, not only did MTI choose to retain counsel other than Plaintiffs' counsel for that matter, MTI failed even to inform Plaintiffs' counsel of the trademark registration. *Id.* Because Plaintiffs' counsel's call to Rainey conveyed to him the message that they were protecting Gray and MTB's intellectual property interests, not MTI's, the Court holds they satisfied the requirement outlined in *Tuten* that counsel must communicate to the client that it no longer represents the client.

                2.     *Plaintiffs' counsel have performed no legal work for MTI since 2010*

Further proof that MTI is not a current client of Plaintiffs' counsel is found in the simple fact that Plaintiffs' counsel have failed to perform any legal work for MTI in the last half-decade. Although Plaintiffs' counsel have provided legal advice in matters relating generally to the Band and its respective entities, they have explicitly done so in their role as counsel for Plaintiffs only. ECF No. 35-1 at 9. Put another way, Plaintiffs' counsel's verbal and written declarations to Rainey consistently and unequivocally demonstrated to him that they solely represented the interests of Plaintiffs, and not those of Defendants.

The 2014 RED distribution agreement and corresponding license agreement between MTI

and MTE provide the best example of Plaintiffs' counsel's communications to MTI that they no longer represented it. As the Court noted above, Plaintiffs' counsel became involved in this transaction solely at the behest of Gray, who requested that Rainey send the above-mentioned agreements to Plaintiffs' counsel for review. *Id.* Importantly, both agreements were drafted by counsel separately retained by Rainey, and Plaintiffs' counsel, apart from their work on Gray's behalf, provided no legal services in the development of either agreement. *Id.* at 10. In all communications with MTI and Rainey that followed Plaintiffs' counsel's review of the agreements, Plaintiffs' counsel expressly stated that their communications were made on behalf of Gray. *Id.* Thus, the 2014 transactions are indicative not only of Plaintiffs' counsel's performing legal work on behalf of their client, Gray, they also show that Plaintiffs' counsel demonstrated to MTI and Rainey that they were not performing legal work on their behalf. Ultimately, the actions of both MTI and Plaintiffs' counsel subsequent to 2010 establish that Plaintiffs' counsel effectively communicated to MTI they were no longer representing its interest as a client.

MTI is a former client of Plaintiffs' counsel because Plaintiffs' counsel communicated to MTI and Rainey that they had terminated their attorney-client relationship, the most recent time being when they called Rainey in relation to the instant lawsuit and demanded that MTI direct its lawyer to cancel its allegedly infringing trademarks.

For these reasons, the Court holds MTI is no longer a current client of Plaintiffs' counsel, and therefore Rules 1.6(a) and 1.7 of the RPC fail to serve as a basis for Plaintiffs' counsel's disqualification.

### B.     Analysis of Defendants' Motion Under Rules 1.9(a) and 1.9(c)

The Court now turns to Defendants' argument that Plaintiffs' counsel should be disqualified

from representing Plaintiffs in this action because they have violated Rules 1.9(a) and 1.9(c) of the RPC. As discussed above, MTI is a former, rather than a current, client of Plaintiffs' counsel, and as such, Rules 1.9(a) and 1.9(c) properly guide the analysis because Rule 1.9 details the duties owed by attorneys to former clients. Rule 1.9, RPC, Rule 407, SCACR.

> 1. *The current lawsuit is neither substantially related to nor the same as the subject of Plaintiffs' counsel's previous representations of MTI*

Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Rule 1.9(a), RPC, Rule 407, SCACR. The "substantial relationship" test requires the party moving for disqualification under Rule 1.9(a) show the following two elements: (1) that an attorney-client relationship existed between the alleged former client; and (2) that the former representation and the current controversy are substantially related. *See Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) ("[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client."). Importantly, "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute," or if there is a substantial risk that confidential factual information, relevant to the suit at hand, would have been obtained during this previous representation. Rule 1.9, cmt. 3, RPC, Rule 407, SCACR.

As observed above, an attorney-client relationship existed between Plaintiffs' counsel and their former client, MTI. Prior to 2010, Plaintiffs' counsel represented MTI in the following transactions: (1) a contract suit involving payment for albums; (2) the issuance of stock certificates for MTI shares that were sold or proposed to be sold; (3) a cease and desist suit relating to the illegal

9

manufacturing and selling of unauthorized songs from the pre-1984 master recordings; and (4) a review of MTI's bylaws for the company shareholders. ECF No. 35-1 at 6-7. The current lawsuit is neither substantially related to nor the same as the subject of Plaintiffs' counsel's previous representation of MTI. The issue in the current lawsuit—trademark infringement of the Name of the Band—is fundamentally different than the subject of all of Plaintiffs' counsel's prior representations of MTI.

In stark contrast to the matters wherein Plaintiffs' counsel represented MTI earlier, the instant suit contains the following claims made by Plaintiffs: (1) MTB possesses exclusive ownership of the Name; (2) Defendants allegedly fraudulently obtained the purportedly infringing trademarks, which should therefore be cancelled; (3) Defendants have committed trademark infringement and dilution; and (4) Defendants have committed breach of contract, conversion, unfair trade practices, and breach of contract accompanied by a fraudulent act. ECF No. 35 at 13. None of Plaintiffs' counsel's prior representations of MTI have any relationship to the issues in this lawsuit. Therefore, Defendants fail to meet the "substantial relationship" test necessary to prove a breach under Rule 1.9(a) sufficient to disqualify Plaintiffs' counsel. Moreover, there is no confidential factual information relevant to this action Plaintiffs' counsel obtained during any of these prior representations. Accordingly, the Court holds that Plaintiffs' counsel is not in breach of Rule 1.9(a) because the current lawsuit is neither substantially related to nor the same as the subject of Plaintiffs' counsel's previous representation of MTI.

> 2. *The information possessed by Plaintiffs' counsel relating to their previous representation of MTI is irrelevant and insignificant to the current lawsuit*

Rule 1.9(c) states in pertinent part that "[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not

thereafter: (1) use information relating to the representation to the disadvantage of the former client"; or "(2) reveal information relating to the representation." Rule 1.9(c), RPC, Rule 407, SCACR. Notably, the comments to Rule 1.9(c) indicate that "[i]n the case of an organizational client, general knowledge of the [former] client's policies and practices ordinarily will not preclude a subsequent representation [of a client whose interests are materially adverse to the interests of the former client]." *Id.* cmt. 3.

Defendants insist that Plaintiffs' counsel possess the Road Map and certain corporate records of MTI and have used them to disadvantage Defendants in this action. ECF No. 31-1 at 10-12. However, the Road Map serves as a prime example of insignificant and irrelevant information that Plaintiffs' counsel fail to rely on in their current representation of MTB and Gray against MTI.

First, Plaintiffs' counsel requested that Rainey provide the Road Map solely for use in their estate planning efforts that they were undertaking at the specific request of Gray. ECF No. 35-1 at 9. Moreover, the factual content within the Road Map is not confidential. Rather, it is an aggregation of information that Plaintiffs' counsel could have gathered through other sources if they wished to do so. ECF No. 35 at 13. Considering the fact that Rainey acted as the Band's manager for years and was intimately familiar with its business dealings, it is unsurprising that Plaintiffs' counsel requested Rainey provide the information ultimately formulated into the Road Map. Thus, the Road Map is not a confidential document, but rather a document Rainey expected would be shared with Gray because Plaintiffs' counsel requested it in the context of Gray's estate planning.

Plaintiffs' counsel's possession of certain MTI corporate records is likewise wholly insignificant to the instant case. As the Court earlier observed, in 2009 and 2010, Rainey requested that Plaintiffs' counsel perform legal work to update MTI's corporate records. ECF No. 35-1 at 7.

11

Importantly, at that time and up to the present, the only MTI corporate records possessed by Plaintiffs' counsel are as follows: (1) a copy of MTI's bylaws; (2) a copy of the shareholders' agreement; and (3) copies of stock certificates involving both MTI and Gray. *Id.* Although Plaintiffs' counsel asked for the full, current set of MTI's corporate records, Rainey neglected to send them. *Id.* at 8. Defendants have failed to provide, and the Court is unable to fathom, how the MTI corporate records possessed by Plaintiffs' counsel might be significant or relevant to the core issue in the current lawsuit of trademark infringement and dilution.

Therefore, because the Court is of the opinion Plaintiffs' counsel's possession of these limited documents containing only general, non-confidential information has in no way been used and in fact could not be used to the disadvantage of MTI in the current lawsuit, nor has any confidential information relating to MTI been revealed to Plaintiffs' advantage during the course of this lawsuit, the Court holds Plaintiffs' counsel are not in violation of Rule 1.9(c) of the RPC.

### C.     Analysis of Defendants' Motion Under Rule 3.7(a)

Finally, the Court addresses Defendants' argument that Rule 3.7(a) requires Plaintiffs' counsel's disqualification. Under Rule 3.7(a), except under limited exceptions, "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." Rule 3.7(a), RPC, Rule 407, SCACR.

Defendants contend that Plaintiffs' counsel will likely be a necessary witness should this case go to trial. ECF No. 31-1 at 13. However, the two items raised by Defendants on which they argue Plaintiffs' counsel could be called to testify— the 1984 Letter Agreement and the Road Map—may easily be discussed and examined in court by other witnesses, including Ron Taft, who drafted the 1984 Letter Agreement, and Rainey, who compiled the Road Map. ECF No. 35 at 5-6.

As the reader is already aware, Plaintiffs' counsel did not participate in the drafting or discussion of the 1984 Letter Agreement and had no involvement at all in that transaction. Similarly, because Plaintiffs' counsel failed to draft the Road Map, they would not be expected to have any particular knowledge about that document. Thus, the Court holds Defendants' argument that Rule 3.7(a) requires disqualification is likewise without merit.

## VI.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Defendants' motion to disqualify is **DENIED**.

**IT IS SO ORDERED**.

Signed this 1st day of September, 2016, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
